

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2004

# Corley v. Infinity Leader Ins

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4508

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Corley v. Infinity Leader Ins" (2004). *2004 Decisions.* Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-4508
_____

SABRINA CORLEY,

Appellant

v.

INFINITY LEADER INSURANCE COMPANY, INC., d/b/a Tico Insurance Company

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 03-cv-00523)
District Judge: Hon. Gary L. Lancaster

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 26, 2004

BEFORE: NYGAARD, AMBRO and VAN ANTWERPEN, Circuit Judges

(Filed November 1, 2004)

___

OPINION
_____

VAN ANTWERPEN, Circuit Judge

Sabrina Corley ("Mrs. Corley") brought suit against Infinity Leader Insurance

("Infinity") seeking specific performance under the underinsured motorist coverage of a

policy issued by Infinity and claiming that Infinity acted in bad faith when it refused to

arbitrate the dispute over whether she was covered by said insurance policy. The District Court granted Infinity's motion to dismiss for failure to state a claim upon which relief could be granted. Mrs. Corley now argues four issues: (1) the District Court impermissibly reformed her complaint so as to bar her recovery; (2) the District Court failed to construe the contract between her and Infinity properly; (3) the doctrine of reasonable expectation supports her claim for relief; and (4) the District Court incorrectly found there was no evidence of bad faith on the part of Infinity. For the reasons below, we now affirm the order of the District Court.

I. Factual and Procedural History

We shall briefly review the essential facts of this case. On October 24, 2001, Mrs. Corley was injured on a Honda motorcycle operated by her husband when an automobile turned in front of the motorcycle. She recovered the monetary policy limits from both the insurer of the automobile and the insurer covering her husband's operation of the motorcycle. As her damages far exceeded the amount recovered from these two policies, Mrs. Corley submitted a claim to Infinity for underinsured motorist coverage pursuant to a commercial lines policy issued to her husband. This policy lists only a 1969 Chevy C-50 dump truck as a "covered auto." Infinity denied Mrs. Corley's claim on the grounds that the motorcycle involved in the accident was not described in the policy issued to her husband. Mrs. Corley insisted she was covered under this policy and requested

2

arbitration; this request was refused by Infinity.

Thereafter, Mrs. Corley instituted the instant action. Infinity filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which was granted by the District Court. This appeal of that order followed.

## II. Standard of Review

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332. We now exercise jurisdiction over this appeal of a final district court order under 28 U.S.C. § 1291. We review Rule 12(b)(6) dismissals *de novo*, and we must accept all well-pleaded allegations as true and draw all reasonable inferences from them in favor of Mrs. Corley. *See, e.g., Anthony v. Council*, 316 F.3d 412, 416 (3d Cir. 2003).

## III. Discussion

**The Insurance Policy in Question was Not Implicated By Corley's Accident**

The main issue to be resolved is whether Mrs. Corley is covered by the commercial lines policy issued to her husband by Infinity.[1] She contends that the District Court erred

---

We briefly note that Corley's claim that the District Court impermissibly reformed her complaint so as to bar her recovery is without merit. Corley makes much of the fact that Infinity, in its motion to dismiss, stated that the policy declarations do not support a claim for relief, while the District Court cited provisions of the policy's underinsured motorist endorsement to support its decision to dismiss. This interchange of phrases is irrelevant since, as we explain below, both the policy and the accompanying endorsement clearly do not provide Corley with the relief she seeks.

when it determined her claim fell outside the terms of the insurance policy issued by Infinity. Under Pennsylvania law, we must read this policy as a whole, and construe it according to its plain meaning. *See Frog. Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d. 742, 746 (3d. Cir. 1999). As long as we may fairly read an insurance contract without ambiguity, the construction of such a policy is a matter of law. *See Trustees of the University of Pennsylvania v. Lexington Insurance Co.*, 815 F.2d 890, 896 (3d. Cir. 1987). Furthermore, a provision is ambiguous only if reasonable people could, in the context of the entire policy, *fairly* ascribe differing meanings to it. *See Frog. Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d. at 746 (emphasis added).

Upon review of the policy in question, we find no ambiguity that would allow Mrs. Corley to distort the coverage provided by the policy in question to furnish her with underinsured motorist coverage for this particular accident. Without belaboring the point, the policy declaration for the commercial lines policy issued to Mrs. Corley's husband makes reference to only one vehicle, namely the 1969 Chevy dump truck. All forms of coverage purchased under this policy apply only to that vehicle, as a specifically described auto under the plan.[2] As we see it, there is no ambiguity as to which vehicles this policy was intended to cover. Infinity provides for nine different varieties of

---

 The policy declaration indicates which vehicles are insured under each coverage plan through the use of numerals defined on the fourth page of the policy; the numeral '7,' which follows every type of coverage purchased by Corley's husband, restricts all coverage only to vehicles specifically described by the policy.

4

coverage under this policy: "Any Auto," followed by a sliding scale of eight, gradually more particularized classifications of vehicles to be covered.[3] We are aided by the contractual interpretation maxim *expressio unius est exclusio alterius* ("to include one is to exclude the others") in reaching our conclusion: the existence of the "Any Auto" classification compels a finding that the choice of one classification excludes all others that are of greater quantum. As such, the choice by Mrs. Corley's husband to cover only the specifically referenced vehicle prevents finding, as she contends, that the language of the policy supports a finding of coverage for injuries sustained on any vehicle owned by her family. There is no ambiguity here–Mrs. Corley's motorcycle accident does not implicate this policy's underinsured motorist coverage.

Mrs. Corley points to the underinsured motorist endorsement modifying the policy in question as support for her claim for recovery. Specifically, she cites subparagraph A.1. which reads, in relevant part,

> We will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.'

If we were to consider the language of this subparagraph in a vacuum, as suggested by Mrs. Corley, one could construe the endorsement's promise to pay "all sums" as

---

The sliding descriptions of coverage is: "Any Auto," "Owned Autos Only," "Owned Private Passenger Autos Only," "Owned Autos Other Than Private Passenger Autos Only," "Owned Autos Subject To No-Fault," "Owned Autos Subject To A Compulsory Uninsured Motorists Law," "Specifically Described Autos," "Hired Autos Only," and "Nonowned Autos Only."

providing the relief she demands. However, upon considering the endorsement and policy as a whole, as we must, the interpretation suggested by Mrs. Corley becomes untenable. The introduction to the endorsement reads: "For a *covered* '*auto*'...this endorsement modifies insurance provided under the [] Business Auto Coverage form"(emphasis added). As the District Court found, the plain language of the endorsement modifies the policy with regard to any vehicle *covered by the policy*. In her brief, Mrs. Corley focuses exclusively on the law governing exemptions of risk from an insurance policy, without indicating why the motorcycle, as an undesignated vehicle, should be included under the policy's coverage. To construe the endorsement to radically extend, *sub silentio*, the original vehicle coverage from one 1969 Chevy dump truck to all vehicles acquired by Mrs. Corley's husband (even if not disclosed to Infinity) defies the clear language of the policy.

Finally, we conclude that construing the insurance policy in this fashion does not run afoul of any public policy interest of the Commonwealth of Pennsylvania. In fact, such a construction advances Pennsylvania's policy of controlling insurance costs. *See generally Burnstein v. Prudential Pro. & Cas. Ins. Co.*, 809 A.2d 204 (Pa. 2002) (rejecting the proposition that underinsured motorist coverage is inherently personal, and hence not portable); *see also Prudential Pro. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747 (Pa. 2002) (rejecting insurance policy interpretation that would allow "insureds to collect [underinsured motorist] benefits...even if the insureds never disclose any of the other

6

household vehicles to the insurers"); *Nationwide Mut. Ins. Co. v. Riley*, 352 F.3d 804, 810 (3d. Cir. 2003) (refusing to force an insurance carrier to provide underinsured motorist coverage where the existence of another vehicle was not disclosed by insured). Our decision today to affirm the denial of Mrs. Corley's claim promotes Pennsylvania's goal of keeping insurance costs at reasonable levels. To allow Mrs. Corley and insureds like her to recover on insurance claims for vehicles that are not disclosed to an insurer (who then cannot charge the appropriate premiums) would force insuers to increase the cost of insurance for all customers to cover the risk that such cloaked vehicles might one day appear.

We recognize that Mrs. Corley has suffered a great deal from this accident. However, for reasons stated above, she may not recover from Infinity. We therefore find that the District Court properly dismissed her claim.


**Corley Has Waived Her Reasonable Expectation Argument**

Mrs. Corley also argues on appeal that the doctrine of reasonable expectation supports her claim for relief. However, because this is the first occasion that this argument has been made (despite the many briefs filed with the District Court by both Corley and Infinity), it has been waived. *See Gass v. V.I. Telephone Corp.*, 311 F.3d 237, 246 (3d. Cir. 2002).

Even assuming, *arguendo*, that this argument had not been waived, it cannot revive Mrs. Corley's claim. "A risk that comes naturally within the terms of a policy is not deemed to be excluded unless the intent of the parties to exclude it appears clearly, so that it cannot be misconstrued." Couch on Insurance, 22:31 (3d ed. 1998). As we have stated above, the plain language of the insurance policy in question clearly limits coverage to damages arising from the operation of those vehicles specifically described, in this case the 1969 Chevy dump truck. As such, the risk that Mrs. Corley would be injured on another, undisclosed vehicle is not one that could come naturally from the terms of that policy. It would simply have been unreasonable for Mrs. Corley to have believed that, because her husband had purchased underinsured motorist coverage only for his dump truck, she would be covered by that policy for an accident arising from riding as a passenger on his Honda motorcycle, insured under a different policy with a different insurance company.

**Infinity Has Not Acted In Bad Faith**

Mrs. Corley also claims that Infinity's refusal to arbitrate this dispute constitutes bad faith. According to the policy's arbitration clause, arbitration is not required unless there is a disagreement as to (1) whether the insured is legally entitled to recover damages from an owner of an underinsured vehicle, or (2) the amount of damages. Here, the litigants are disputing neither fault nor amount of damages. *Cf. State Farm Mut. Ins. Co.*

8

*v. Coviello*, 233 F.3d 710 , 717 (3d Cir. 2000). What is in dispute is whether Mrs. Corley's injuries from the motorcycle accident are covered by the dump truck policy. The dispute therefore falls outside of the arbitration clause. As such, the District Court's dismissal of this claim was proper.

We affirm the judgment of the District Court below.